ACCEPTED
05-15-01108-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
11/2/2015 3:50:45 PM
LISA MATZ
CLERK

No. 05-15-01108-CV

_____

IN THE COURT OF APPEALS
FOR THE FIFTH DISTRICTOF TEXAS,
DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
11/2/2015 3:50:45 PM
LISA MATZ
Clerk

_____

ARCH RESORTS, LLC,
*Appellant/Cross-Appellee,*

v.

CITY OF MCKINNEY, TEXAS,
*Appellee/Cross-Appellant.*

_____

**BRIEF OF APPELLANT ARCH RESORTS, LLC**
_____

ON APPEAL FROM THE 219th JUDICIAL
DISTRICT COURT OF COLLIN COUNTY, TEXAS

Trial Court Cause Number 219-01855-2015

_____

Arthur J. Anderson
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone No.:  (214) 745-5745
Fax No.:  (214) 745-5390
aanderson@winstead.com

ATTORNEYS FOR APPELLANT/
CROSS-APPELLEE

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), Appellant certifies that the following are the correct parties and counsel:

**PARTIES:**

| | |
|---|---|
| **PLAINTIFF/COUNTER-DEFENDANT/APPELLANT/ CROSS-APPELLEE:** | **TRIAL AND APPELLATE COUNSEL:** |
| Arch Resorts, LLC | Arthur J. Anderson<br>Winstead PC<br>500 Winstead Building<br>2728 N. Harwood Street<br>Dallas, TX 75201<br>(214) 745-5745 – Phone<br>(214) 745-5390 – Fax<br>aanderson@winstead.com |
| **DEFENDANT/COUNTER-PLAINTIFF/APPELLEE/ CROSS-APPELLANT:** | **TRIAL AND APPELLATE COUNSEL:** |
| City of McKinney, Texas | Robert F. Brown<br>Brown & Hofmeister, LLP<br>740 E. Campbell Road<br>Suite 800<br>Richardson, TX 75081<br>(214) 747-6130 – Phone<br>(214) 747.6111 – Fax<br>rbrown@bhlaw.net |

# TABLE OF CONTENTS

                                                                                        **Page No.**

IDENTITY OF PARTIES AND COUNSEL ......................................................... ii

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES ............................................................................ vi

STATEMENT ON ORAL ARGUMENT ........................................................... xi

STATEMENT OF THE CASE ......................................................................... xii

ISSUES PRESENTED .................................................................................. xiii

      ISSUE I - Arch Resorts applied for and received Collin County
          approvals of development permits for an RV resort and retail
          buildings prior to February 5, 2015, which is more than 90 days
          before the effective date of the City's annexation. Arch Resorts
          was also using its property to construct and develop its RV
          resort and retail buildings on the date that the city instituted
          annexation proceedings. Can the City prohibit Arch Resorts
          from beginning to use its land for the RV resort project in
          violation of §43.002(a), Tex. Loc. Gov't Code? .............................. xiii

      ISSUE II - An ordinance expressly extending its building code to the
          ETJ was enacted by the City on March 17, 2015. Can the City
          require compliance with its building code in the extraterritorial
          jurisdiction ("ETJ") prior to March 17, 2015 without an
          ordinance expressly authorizing the extension? .............................. xiii

      ISSUE III - The City's March 17, 2015, ordinance for the first time
          expressly required builders within the ETJ to obtain permits
          from the City. Did the City have the requisite authority to enact
          the ordinance? .................................................................................. xiii

      ISSUE IV - Arch Resorts obtained numerous development permits
          from the County prior to the enactment of the City's ordinances
          extending its building code to the ETJ and annexing and zoning
          the property. Does Arch Resorts have vested rights to continue
          its project under Chapter 245, TEX. LOC. GOV'T CODE? ................... xiii

ISSUE V - The City issued a stop work order on May 28, 2015, preventing Arch Resorts from finishing its Project. Did Arch Resorts introduce sufficient evidence and testimony to show that it would suffer probable, imminent and irreparable harm due to the City's actions? ................................................................ xiii

STATEMENT OF FACTS ...........................................................................1

SUMMARY OF THE ARGUMENT ............................................................7

ARGUMENT AND AUTHORITIES.............................................................8

I.     Legal standard for temporary injunction.................................8

II.    Courts construe Texas statutes as limitations on cities exercising their governmental powers in the ETJ...............10

III.   The City is statutorily prohibited from preventing Arch Resorts from continuing its RV resort project. ..................12

     A.    Arch Resorts has vested rights to continue its project under the Municipal Annexation Act.........................12

     B.    Arch Resorts' Project is grandfathered under § 43.002(a)(2), TEX. LOC. GOV'T CODE...................13

     C.    Arch Resorts is also grandfathered under § 43.002(a)(1).........15

     D.    The City is trying to prohibit Arch Resorts from continuing to use its land following annexation.......................16

IV.   Collin County properly approved permits for Arch Resorts' project.................................................................17

     A.    The City's complaint about the validity of the County approvals represents an unauthorized attack on the County's regulatory power. ....................................18

     B.    The City admits the County had legal authority to approve at least one of Arch Resorts' permit applications.......19

     C.    The RV resort project did not require plat approval by either the City or the County...................................20

V.     Arch Resorts is vested in the prior County permit approvals under Chapter 245, TEX. LOC. GOV'T CODE. ......................................23

    A.     Arch Resorts' Project is clearly defined and protected under the statute. ........................................................23

    B.     *Shumaker* does not apply to these facts. ...................................25

VI.    The City cannot stop Arch Resorts' project on the grounds that it should have submitted permits to the City rather than the County. ......................................................................................27

    A.     A building code cannot be impliedly extended to the ETJ.......27

    B.     The City/County Plat Approval Agreement did not mandate City permit approval.....................................................28

VII.   A home-rule municipality cannot impose its building, fire and construction-related codes in its extraterritorial jurisdiction ..............29

    A.     *Bizios* does not address home rule authority.............................29

    B.     §§ 212.002 and .003, TEX. LOC. GOV'T CODE, do not expressly authorize cities to extend their building codes to the ETJ. .................................................................................30

    C.     § 242.001, TEX. LOC. GOV'T CODE does not expressly authorize McKinney to extend its building code to the ETJ. .........................................................................................31

    D.     § 214.904(a), TEX. LOC. GOV'T CODE does not expressly authorize cities to extend their building codes to the ETJ.........34

VIII.  An injunction in Arch Resorts' favor would not disserve the public interest. ...............................................................................36

IX.    Arch Resorts will suffer probable, imminent and irreparable harm due to the City's actions.............................................................39

CONCLUSION AND PRAYER ............................................................44

CERTIFICATE OF COMPLIANCE WITH RULE 9.4.........................46

APPENDIX.............................................................................................47

# TABLE OF AUTHORITIES

**Page(s)**

**STATE AND FEDERAL CASES**

*Benavides Indep. Sch. Dist. v. Guerra*,
681 S.W.2d 246 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.)...................43

*Bizios v. Town of Lakewood Village*,
453 S.W.3d 598 (Tex. App.—Fort Worth 2014, pet. pending)...............29, 30, 35

*Butnaru v. Ford Motor Co.*,
84 S.W.3d 198 (Tex. 2002).....................................................................9, 40, 43

*City of Austin v. Jamail*,
662 S.W.2d 779 (Tex. App.—Austin 1983, writ dism'd w.o.j.) ........................11

*City of Duncanville v. City of Woodland Hills*,
489 S.W.2d 557 (Tex. 1972) ...........................................................................13

*City of Heletos v. Miller*,
243 S.W.3d 704 (Tex. App.—San Antonio, 2007, no pet.) ..............................14

*City of Lucas v. North Texas Municipal Water District*,
724 S.W.2d 811 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)............................35

*City of Lufkin v. AKJ Properties*,
2012 Tex. App. LEXIS 5057 (Tex. App.—Texarkana 2012, no pet.) ...............15

*City of Pharr v. Tippitt*,
616 S.W.2d 173 (Tex. 1981) ...........................................................................11

*City of Silsbee v. Herron*,
484 S.W.2d 154 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.)...............16

*City of Sweetwater v. Hamner*,
259 S.W. 191 (Tex. Civ. App. 1924, error dism'd)..........................................11

*City of West Lake Hills v. Westwood Legal Def. Fund*,
598 S.W.2d 681 (Tex. Civ. App.—Waco 1989, no writ)...................................11

*Coastal Marine Service. v. City of Port Neches*,
    11 S.W.3d 509 (Tex. App.—Beaumont 2000) ....................................................40

*CPM Trust v. City of Plano*,
    461 S.W.3d 661 (Tex. App.—Dallas, no pet.) ............................................42, 43

*Crosstex Energy Servs. LP v. Pro Plus, Inc.*,
    430 S.W.3d 384 (Tex. 2014) ........................................................................10

*F.T. Biddle v. Bd. of Adjustment, Vill of Spring Valley*,
    316 S.W.2d 437 (Tex. Civ. App.—Houston 1958, writ ref'd n.r.e.)..................16

*FM Props Operating Co. v. City of Austin*,
    22 S.W.3d 868 (Tex. 2000)............................................................................10

*Greater Houston Bank v. Conte*,
    641 S.W.2d 407 (Tex. App.—Houston [14th Dist.] 1982, no writ)....................40

*Hartsell v. Town of Talty*,
    130 S.W.3d 325 (Tex. App.—Dallas 2004, pet. den.) ......................................24

*In re B.S.H.*,
    308 S.W.3d 76 (Tex. App.—Fort Worth 2009, no pet.)..............................37, 38

*In re Newton*,
    146 S.W.3d 648 (Tex. 2004) .........................................................................43

*Knapp v. City of El Paso*,
    586 S.W.2d 216 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.) ...................13

*Lavigne v. Holder*, 186 S.W.3d 625 (Tex. App.—Fort Worth 2006, no pet.).........40

*M. Fitzgerald v. Advanced Spine Fixation*, 996 S.W.2d 865 (Tex. 1999) ..............30

*Marketshare Telecom, L.L.C. v. Ericsson, Inc.*,
    198 S.W.3d 908 (Tex. App.—Dallas 2006, no pet.) ......................................9, 10

*McKee v. Mt. Pleasant*,
    328 S.W.2d 224 (Tex. Civ. App.—Texarkana 1959)........................................40

*North Cypress Medical Center Operating Co. v. St. Laurent*,
    296 S.W.3d 171 (Tex. App.—Houston [14th Dist.] 2009, no pet.).........39, 40, 42

*Rhino Real Estate Invs., Inc. v. City of Runaway Bay*,
  2009 WL 2196131 (Tex. App.—Fort Worth 2009, no pet.) ..............................21

*Save Our Springs Alliance v. City of Austin*,
  149 S.W.3d 674 (Tex. App.—Austin 2004, no pet.).........................................23

*Shumaker Enterprises, Inc. v. City of Austin*,
  325 S.W.3d 812 (Tex. App.—Austin 2010, no pet.).........................................25

*State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*,
  82 S.W.3d 322 (Tex. 2002)..................................................................10

*State v. Shumake*,
  199 S.W.3d 279 (Tex. 2006) ................................................................10

*Surko Enters., Inc. v. Borg-Warner Acceptance Corp.*,
  782 S.W.2d 223 (Tex. App.—Houston [1st Dist.] 1989, no writ) ......................43

*Swinney v. San Antonio*,
  483 S.W.2d 556 (Tex. Civ. App.—San Antonio 1972) ....................................40

*Tex. Indus. Gas v. Phx. Metallurgical Corp.*,
  828 S.W.2d 529 (Tex. App.—Houston [1st Dist.] 1992, no writ) ......................42

*Tex. Lottery Comm'n v. First State Bank of DeQueen*,
  325 S.W.3d 628 (Tex. 2010) ...........................................................10, 18

*Texas Dep't of Transp. v. Sefzik*,
  355 S.W.3d 618 (Tex. 2011) ................................................................18

*TMC Worldwide, L.P. v. Gray*,
  178 S.W.3d 29 (Tex. App.—Houston [1st Dist.] 2005, no pet.).........................9

*Village of Tiki Island v. Ronquille*,
  463 S.W.3d 562 (Tex. App.—Houston [1st Dist.] 2015, no pet.).................43, 44

*Walling v. Metcalfe*,
  863 S.W.2d 56 (Tex. 1993)..................................................................39

*Weslaco v. Carpenter*,
  694 S.W.2d 601 (Tex. App.—Corpus Christi, 1985, no pet.)...........................22

**STATUTES**

TEX. CIV. PRAC. & REM. CODE, § 37.006(b) ........................................................18

TEX. FAMILY CODE, § 154.014 ........................................................................37

TEX. GOV'T CODE, § 311.021(5) .....................................................................37

TEX. LOC. GOV'T CODE, Chapter 212 ........................................................passim

TEX. LOC. GOV'T CODE ANN. § 212.003........................................... 11, 37-38

TEX. LOC. GOV'T CODE, § 42.042 ...................................................................35

TEX. LOC. GOV'T CODE, § 42.044 ...................................................................35

TEX. LOC. GOV'T CODE, § 42.046 ...................................................................35

TEX. LOC. GOV'T CODE, § 43.002(a)(1) .....................................................15, 17

TEX. LOC. GOV'T CODE, § 43.002(a)(2) ...................................13, 14, 17, 19

TEX. LOC. GOV'T CODE, § 43.063 ...................................................................13

TEX. LOC. GOV'T CODE, § 43.121 ...................................................................35

TEX. LOC. GOV'T CODE § 212.043(1) ..............................................................31

TEX. LOC. GOV'T CODE, § 212.172 .................................................................35

TEX. LOC. GOV'T CODE, § 214.904(a) .............................................................34

TEX. LOC. GOV'T CODE, § 216.003 .................................................................34

TEX. LOC. GOV'T CODE, § 216.902 .............................................................34, 35

TEX. LOC. GOV'T CODE, § 242.001 ...............................................28, 31, 32, 33

TEX. LOC. GOV'T CODE § 242.001(d) .............................................................32

TEX. LOC. GOV'T CODE, Chapter 245 ........................................................passim

TEX. LOC. GOV'T CODE ANN., § 245.002(a) ...................................................23

TEX. LOC. GOV'T CODE ANN., § 245.002(d)...................................................23

**OTHER AUTHORITIES**

TEX ATT'Y GEN. OP. GA-0366 ..............................................................................33

TEX. ATT'Y GEN. OP. JC-0425 ...........................................................................24

Black's Law Dictionary 547 (7th ed. 1999) ........................................................24

Webster's Third New International Dictionary (1981) ..........................................37

## STATEMENT ON ORAL ARGUMENT

Landowner requests oral argument pursuant to Texas Rules of Appellate Procedure 39.1 because the legal issues involved are important to developers, builders and municipalities in the State of Texas. The Court's decision process would be significantly aided if oral argument is allowed.

# STATEMENT OF THE CASE

Nature of the Case:

This case concerns the statutory authority of the City of McKinney ("City") to delay and prevent the continuation of Arch Resorts' RV park project ("Project") by annexing its property ("Property") well after construction of the Project had commenced. At issue is whether the City can prevent the Project if County approvals were obtained prior to annexation, and whether Arch Resorts was required to obtain permits from the City prior to commencing construction.

The Course of Proceedings:

Addison Wilson III, Trustee ("Wilson"), filed an original petition against Arch Resorts in the 219th District Court of Collin County, Texas, on May 13, 2015 (CR 11-156). Arch Resorts then filed its Answer and Counterclaim in Cause No. 219-01855-2015 (CR 305-14). Wilson's temporary restraining order application against Arch Resorts was denied (CR 737). Following the City's posting of a "stop work" order on the property, Arch Resorts filed its Original Petition and Application for Temporary Injunctive Relief against the City in Cause No. 366-02143-2015 in the 366th Judicial District Court on May 29, 2015 (CR 686-736). Judge Wheeler recused himself, and the case was transferred by Judge Murphy to the 199th District Court of Collin County (CR 678-9). The City filed its Answer and Original Counterclaim and Request for Injunctive Relief (CR 686-736). The Wilson and Arch Resorts suits were consolidated in Cause No. 219-01855-2015 (CR 737). Arch Resorts then nonsuited its cause of action against Wilson who is no longer a party (CR 385-8).

Trial Court's Disposition:

Following a hearing before the trial court on August 21, 2015, the court entered orders denying both parties' applications for temporary injunctions. (CR 554-5). Arch Resorts timely filed its notice of appeal on September 14, 2015 (CR 558-60).

# ISSUES PRESENTED

## ISSUE I

Arch Resorts applied for and received Collin County approvals of development permits for an RV resort and retail buildings prior to February 5, 2015, which is more than 90 days before the effective date of the City's annexation. Arch Resorts was also using its property to construct and develop its RV resort and retail buildings on the date that the city instituted annexation proceedings. Can the City prohibit Arch Resorts from beginning to use its land for the RV resort project in violation of §43.002(a), Tex. Loc. Gov't Code?

## ISSUE II

An ordinance expressly extending its building code to the ETJ was enacted by the City on March 17, 2015. Can the City require compliance with its building code in the extraterritorial jurisdiction ("ETJ") prior to March 17, 2015 without an ordinance expressly authorizing the extension?

## ISSUE III

The City's March 17, 2015, ordinance for the first time expressly required builders within the ETJ to obtain permits from the City. Did the City have the requisite authority to enact the ordinance?

## ISSUE IV

Arch Resorts obtained numerous development permits from the County prior to the enactment of the City's ordinances extending its building code to the ETJ and annexing and zoning the property. Does Arch Resorts have vested rights to continue its project under Chapter 245, TEX. LOC. GOV'T CODE?

## ISSUE V

The City issued a stop work order on May 28, 2015, preventing Arch Resorts from finishing its Project. Did Arch Resorts introduce sufficient evidence and testimony to show that it would suffer probable, imminent and irreparable harm due to the City's actions?

## STATEMENT OF FACTS

Arch Resorts is the owner and developer of an approximate 43.416 acre tract of land located on FM 543 in Collin County, Texas (the "Property") north of the county courthouse (RR 46)[1]  Formerly known as Crump's Nursery, Arch Resorts purchased the Property in 2014 (RR 110, 113)  At that time, the Property was within the extraterritorial jurisdiction of McKinney (the "ETJ") and unzoned (RR 46; Ex. 2)  The Property was purchased by Arch Resorts for the purpose of development and operation as an upper-end RV resort with retail buildings (the "Project") (RR 111).  While in the ETJ, the Property received no City services (RR 48-9).

Subbarayan Venkatesan testified at the temporary injunction hearing on behalf of Arch Resorts (RR 108).  He and his wife are the principals of Arch Resorts, and Dr. Venkatesan is a professor at the University of Texas at Dallas (RR 108-109).  The Venkatesans met with city representatives in 2014 and were informed that all development permits should be obtained from the county for development of land in the ETJ (RR 110).  The planned RV resort is upper end with a community garden, pet facilities, fitness facilities and a meeting room (RR 111).  Customers are on-site for only a few days and are not long-term residents (RR 111).  There is no landlord/tenant relationship and therefore no

---

[1] Citations to the record are:  (RR ___) refers to the Reporter's Record by page and/or exhibit.  All of the exhibits in the Reporter's Record are Plaintiff's Exhibits.  (CR___) refers to the Clerk's Record by page.  (App ___) refers to the Appendix by tab.

leasehold created (RR 111-112, Ex. 40). The RV resort is more similar to a hotel than an apartment (RR 112).

Jim Adams testified on behalf of the Collin County Development Services (RR 87). His primary work responsibility is to issue development permits for the unincorporated areas of Collin County (RR 88). After the City employees told Arch Resorts' representatives that they should seek permits only from the County, the representatives met with Mr. Adams on June 3, 2015 (RR 88; Ex. 8). Prior to closing on the Property, Arch Resorts requested that Mr. Adams issue a due diligence letter which could be provided to their lender (RR 112). The June 27, 2014 letter by Mr. Adams states that all development permits go through the county and the RV resort use was legally authorized (RR 8). Arch Resorts closed on the Property based upon the City and County representations (RR 113).

Prior to March 17, 2015, the City's ordinances did not require developers of land in the ETJ to submit building permit applications on ETJ land (RR 56). The City's practice prior to March 17, 2015 was for City staff members to tell a person seeking information about the process for developing land in the ETJ that city permits would not be required (RR 57). While during a meeting between Arch Resorts and the County in October 2014, City representatives told County representatives by telephone that the City did not have development ordinances in effect applicable to development of structures in the ETJ (RR 93).

Numerous permit applications were submitted to the County constituting over 346 pages in December 2014 and January 2015 (RR Exs. 6, 7, 9, 36). The County spent significant time reviewing these applications, and Mr. Adams testified that the applications met all County development regulations and standards (RR 90). City representatives did not dispute Mr. Adams' testimony (RR 55). According to Mr. Adams, the first formal submittal by Arch Resorts to the County was dated December 9, 2014 (RR 90; Ex. 6). While approval of this submittal authorized construction of the first phase of development, the County required that a site plan showing development of the entirety of the Property be reviewed and approved by the County during the initial submittal process (RR 91, App. D). The City had actual notice of the proposed development of the entirety of the Property in Spring 2015 (RR 58).

The County reviewed Arch Resorts' site plan for the entirety of the Property and determined that platting was not required (RR 91). Other RV parks/resorts had been approved by the County without requiring platting (RR 92). Neither the City nor the County had previously required platting for mobile home or RV parks (RR 80, 85, 92). Prior to the filing of this lawsuit, the City's position was that platting would not be required for Arch Resorts' Project (RR Ex. 43).

Crumps Nursery had been abandoned and was overgrown so Arch Resorts spent approximately $50,000.00 cleaning up the Property (RR 114). Arch Resorts'

project included significant renovations to the retail buildings on the front portion of the Property (RR Exs. 14, 36, 44). After County approval, Arch Resorts installed electrical, water, sewer and septic systems (RR, p. 115). As shown in the photographs introduced into the record, Arch Resorts substantially improved the appearance of the Property at an approximate cost of $200,000.00-300,000.00 (RR 115, 116; Exs. 44-7). The pads for the RV vehicles are located behind the retail buildings and are screened from FM 543 (RR Exs. 44-7).

Ninety (90) days prior to the May 5, 2015 annexation date is February 3, 2015 (RR 59). According to both the City and County representatives, Arch Resorts' permits for construction were submitted and approved by the County prior to that date (RR 60-2; Exs. 12-14). In addition, the construction work needed to complete construction was almost finished and occurring on the May 5, 2015 annexation date (RR 60).

City planning director Michael Quint testified at the hearing that the City opposes the use of the Property for an RV resort (RR, p. 55). Specifically, he stated that the City "opposes" the use because "the proposed development is not consistent with the long-term development plans for the City" (RR 55).

The only development in the ETJ that the City is attempting to force compliance with City building codes is Arch Resorts' Project (RR 51-2). While the City initially posted a stop work order on a self-storage project on land within

the ETJ for refusing to apply for City building permits, the City withdrew its stop work order shortly before the temporary injunction hearing (RR 53). No other stop work orders have been posted on land in the ETJ except for Arch Resorts' (RR 53).

The only apparent distinction is that Arch Resorts' property is located in the vicinity of land owned by politically powerful opponents of the RV project (RR 54). These landowners communicated with City representatives regarding the filing of the original lawsuit in May 2015 and enactment of City ordinances impacting the Property (RR 48). One of the nearby tracts is owned by the parents of a McKinney City Council member (RR 46). Another is owned by Addison Wilson who filed the initial petition in this litigation (RR 46-7; CR 11-156).

Prior to March 17, 2015, City planning staff told every member of the public who inquired that permit applications should be submitted only to the County and not the City for development of unplatted land in the ETJ (RR 57). On March 17, 2015, the Council passed an ordinance ("March Ordinance") which expressly extended the building code to the ETJ (RR Ex 24). The City passed the March Ordinance partially in response to the Arch Resorts development (RR 64).

Arch Resorts was also discriminated against in the annexation process. The Property was formally annexed over Arch Resorts' protest on May 5, 2015 (RR Ex. 34). This was the first unilateral annexation by the City during the last twenty

(20) years (RR 59). The City admits that the annexation was partially triggered by neighbors' protests over Arch Resorts' proposed development (RR 64).

In addition to annexing the Property, the City also zoned the Property over Arch Resorts' objection to a zoning district that would not permit the proposed use (RR 64; Ex. 35). The City admits that its self-imposed zoning ordinance prevents the proposed project (RR, p. 64). Any requested rezoning by Arch Resorts to allow its planned use would be recommended for denial by the City (RR, p. 77).

As a result of the May 28 stop work order, Arch Resorts is unable to complete the construction and open for business (CR 116). The following damages are already, and will be, suffered as a result of the City's actions:

1. Damages to Arch Resorts' reputation in the community (RR 117).

2. Potentially missing the market cycle (RR 116).

3. Loss of rental income (RR 117).

4. Expenses such as property taxes and mortgage interest payments (RR 117).

5. Gravel piles that may go bad because the gravel cannot be spread out over the pads (RR 117).

6. Emotional pain suffered by Mr. and Mrs. Venkatesan (RR 116).

While the potential damages are substantial, they are difficult to quantify (RR 118).

The City was aware that development had commenced on the Property in accordance with County approvals in February 2015 (RR 53; Ex. 11). Yet, the City did not issue its stop work order or inform Arch Resorts that it needed to obtain City permits until May 28, 2015 and allowed Arch Resorts' to expend hundreds of thousands of dollars without protest (RR 66). The City did not file its counterclaim and temporary injunction application until July 2015 (2 RR 66; CR. 308-351).

## SUMMARY OF THE ARGUMENT

This Court should reverse the trial court's denial of Arch Resorts' application for temporary injunction and uphold the trial court's denial of the City's application for temporary injunction. Texas courts have long held that a municipality's authority to extend its ordinances outside of its ETJ is very limited. In addition, any ordinance extension must be by an express ordinance. McKinney is requesting this Court to hold that the City could have required development permits in its ETJ prior to March 17, 2015 in the absence of statutory authorization or an express ordinance with extension language. Prior to March 17, 2015, the City's policy was to direct any and all developers of unplatted land in the ETJ (including Arch Resorts) to obtain permits from the County and not the City.

McKinney also desires to apply several ordinances enacted in 2015 to delay and/or prevent Arch Resorts' development of its property which received County

permit approval and had undergone substantial construction at the time of annexation. The City's actions are in direct violation of § 43.002 of the Texas Local Government Code which reflect a clear legislative intent to protect landowners and developers from overreaching municipalities like McKinney who attempt to change the rules "in the middle of the game" by annexation.

Arch Resorts' Project is also protected from subsequent ordinance changes under Chapter 245, TEX. LOC. GOV'T CODE. McKinney admits that it took numerous actions (enacting the March Ordinance, annexing and zoning the Property, and issuing a stop work order) specifically to prevent Arch Resorts' development after Collin County had issued its permits. Because Arch Resorts showed that it had a probable right to recovery on its causes of action, the trial court erred in denying its application for temporary injunction.

Finally, the evidence in the record shows that the City's unauthorized actions to prevent the continuation of the Project results in probable, imminent and irreparable injury to Arch Resorts. The trial court therefore erred in denying Arch Resorts' application for temporary injunction.

## ARGUMENT AND AUTHORITIES

### I.     Legal standard for temporary injunction.

The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's ruling is subject to reversal for a clear

abuse of discretion. *TMC Worldwide, L.P. v. Gray,* 178 S.W.3d 29, 36 (Tex. App.—Houston [1ˢᵗ Dist.] 2005, no pet.). The court does not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* (citing *Johnson v. Fourth Ct. App.*, 700 S.W.2d 916, 918 (Tex. 1985)).

The purpose of a temporary injunction is to preserve the status quo of the subject matter of the litigation pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy. *Id.* To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.* An injury is irreparable if the injured party cannot be compensated adequately in damages or if the damages cannot be measured by any certain pecuniary standard. *Id.* At a temporary injunction hearing, the trial court considers whether the applicant has shown a probability of success and irreparable injury; the parties do not present the underlying merits of the controversy. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 922 (Tex. App.—Dallas 2006, no pet.). A reviewing court will reverse a temporary injunction order if the record shows an abuse of discretion. *Id.* at 916. A trial court abuses its discretion when it misapplies the law to established facts or when the evidence

does not reasonably support the trial court's determination of probable injury or probable right of recovery. *Id.* Because Texas law was misapplied to the factual testimony introduced at the temporary injunction hearing, the trial court abused its discretion and erroneously denied Appellant's request for injunctive relief.

**II. Courts construe Texas statutes as limitations on cities exercising their governmental powers in the ETJ.**

When construing a statute, courts begin with the language. *State v. Shumake*, 199 S.W.3d 279 (Tex. 2006). If the statute is clear, the court must construe the language according to its common meanings. *Crosstex Energy Servs. LP v. Pro Plus, Inc.*, 430 S.W.3d 384 (Tex. 2014). The court initially limits its statutory review to the plain meaning of the text as the sole expression of legislative intent, *see State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002), unless the Legislature has supplied a different meaning from the context or applying the plain meaning would lead to absurd results. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010).

The statutory authority to extend ordinances to the ETJ was addressed by current Governor Greg Abbott when he was on the Supreme Court. "(A) city's authority to regulate land development in its ETJ is wholly derived from a legislative grant of authority." *FM Props Operating Co. v. City of Austin*, 22 S.W.3d 868, 902 (Tex. 2000). Justice Abbott was joined in his dissenting

opinion by current Texas Supreme Court Chief Justice Nathan Hecht and current justice of the U.S. Court of Appeals for the Fifth Circuit Priscilla Owen.

A city must have express (or implied when such power is reasonably incident to those expressly granted) statutory authority to exercise its extraterritorial power. *City of Sweetwater v. Hamner*, 259 S.W. 191 (Tex. Civ. App. 1924, error dism'd). Other case law supports such an interpretation. *See City of Austin v. Jamail*, 662 S.W.2d 779, 782 (Tex. App.—Austin 1983, writ dism'd w.o.j.); *City of West Lake Hills v. Westwood Legal Def. Fund*, 598 S.W.2d 681, 686 (Tex. Civ. App.—Waco 1989, no writ) (both stating that generally a city can exercise its police powers only within that city's corporate limits unless a statute or the Texas Constitution expressly extends its authority).

While zoning and land use designations are generally considered legislative in character, *see City of Pharr v. Tippitt*, 616 S.W.2d 173, 175 (Tex. 1981), the City has no right to legislate land use in its extraterritorial jurisdiction. TEX. LOC. GOV'T CODE ANN. § 212.003(a)(1) (providing that municipality shall not regulate "the use of any building or property for business, industrial, residential, or other purposes" in its extraterritorial jurisdiction unless otherwise authorized by state law). Chapter 211 of the Texas Local Government Code which is the municipal platting statute does not expressly authorize cities to require building permits for vertical construction in their ETJ.

**III. The City is statutorily prohibited from preventing Arch Resorts from continuing its RV resort project.**

Plaintiff has pled two statutory grounds for continuation of its project: § 42.003 and Chapter 245 of the Local Government Code. These statutory provisions contain similar grandfathering protections which reflect the Legislature's strong policy to protect developers' rights over cities' ordinance-making powers if the result would be to adversely impact the progress of the development project.

**A. Arch Resorts has vested rights to continue its project under the Municipal Annexation Act.**

The Property was annexed on May 5, 2015. According to Section 43.002 of the Texas Local Government Code, landowner development projects can be vested in one of two ways prior to annexation:

§ 43.002.    Continuation of Land Use

(a)    A municipality may not, after annexing an area, prohibit a person from:

(1)    continuing to use land in the area in the manner in which the land was being used on the date the annexation proceedings were instituted if the land use was legal at that time; or

(2)    beginning to use land in the area in the manner that was planned for the land before the 90th day before the effective date of the annexation if:

(A)    one or more licenses, certificates, permits, approvals or other forms of authorization by a governmental entity were required by law for the planned land use; and

- 12 -

(B)    a completed application for the initial authorization was filed with the governmental entity before the date the annexation proceedings were instituted.

**B.    Arch Resorts' Project is grandfathered under § 43.002(a)(2), TEX. LOC. GOV'T CODE.**

Arch Resorts submitted the necessary permit applications to show it began to use its Property in the manner that it had planned at least ninety (90) days before the annexation.  Arch Resorts filed and obtained the necessary County permits to be grandfathered under County regulations pursuant to § 43.002(a)(2), TEX. LOC. GOV'T CODE.  "Institution of annexation proceedings" means adoption of an ordinance annexing the area if a single reading is required.  If multiple readings of an ordinance or additional procedural steps are required by a home rule charter, adoption of an ordinance on first reading, or the approval of the first procedural step by the governing body, constitutes initiation of the proceedings.  *City of Duncanville v. City of Woodland Hills*, 489 S.W.2d 557 (Tex. 1972); *Knapp v. City of El Paso*, 586 S.W.2d 216 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.).

This interpretation is consistent with § 43.063, TEX. LOC. GOV'T CODE: "Before a municipality may institute annexation proceedings, the governing body must hold two public hearings."  The "effective date of the annexation" is no earlier than the city council vote on the annexation ordinance.  It could be later than that date if notice of the ordinance is required to be published in the newspaper or as stated in the annexation ordinance.  In this case, it is undisputed

that Arch Resorts submitted its initial applications with the County prior to February 3, 2015 which would be at least ninety (90) days prior to the effective date of the May 5, 2015 annexation (RR Exs. 6, 7, 36).

An opinion with facts similar to the case at bar is *City of Heletos v. Miller*, 243 S.W.3d 704 (Tex. App.—San Antonio, 2007, no pet.). Miller's land was located in the city's ETJ and he put the land under contract to Wal-Mart. He obtained a driveway permit from the state, a utility services agreement with the San Antonio Water System and a preliminary plat. *Id.* at 706. To prevent the Wal-Mart use (similar as to how McKinney is attempting to prevent Arch Resorts' use), the City annexed the property and officially opposed the Wal-Mart development by resolution. *Id.*

Miller filed suit asserting he was "entitled to develop the property free of the City's zoning regulations because he initiated the development prior to the City obtaining regulatory control over the property via annexation." *Id.* at 707. The court of appeals noted that both Chapter 245 and § 43.002 of the Local Government Code provide for the continuation of development projects started prior to annexation and denied the City's plea to the jurisdiction. Because Arch Resorts meets the requirements of § 43.002(a)(2), the trial court erred in denying its application for temporary injunction.

## C. Arch Resorts is also grandfathered under § 43.002(a)(1).

Under § 43.002(a)(1), TEX. LOC. GOV'T CODE, Arch Resorts was using its Property to develop an up-scale RV resort on May 5, 2015, which is the date annexation proceedings were instituted. The City admits that the Property was being developed and used for the RV project on the annexation date. (RR 60).

Arch Resorts' position is supported by an opinion from the Texarkana Court of Appeals. *City of Lufkin v. AKJ Properties*, 2012 Tex. App. LEXIS 5057 (Tex. App.—Texarkana 2012, no pet.). *AKJ* involved annexation of a heavy machinery and equipment storage area by the City of Lufkin. The owners claimed prior non-conforming status under the 1999 statute (now-codified as § 43.002). *Id.* at 4. The owners had to prove they were entitled to protection under the statute, and they claimed that both statutory alternatives applied (actual use and planned use). *Id.* Each claim was submitted to the jury as a separate affirmative defense, and the jury found that both applied. *Id.* at 7. The court held that there was sufficient evidence to support the jury's verdict and AKJ was allowed to continue the use of its property to store and sell heavy machinery and equipment. *Id.* at 13.

The evidence of a commenced and continuing project is stronger in this case for Arch Resorts than for AKJ. A number of Lufkin councilmembers and neighbors testified that there was no indication of a commercial business on AKJ's property prior to annexation. *Id.* at 5. Here, all of the parties agree that significant

- 15 -

development of Arch Resorts' Property had occurred prior to, and on the date of, annexation by the City of McKinney (RR 60, Exs. 44-7). Neighboring landowners were well aware of Arch Resort's project in early 2015 (RR 48). One of the elements of § 43.000(a) is whether a landowner is using a piece of property for a particular purpose if the property is known in the neighborhood as being used for that purpose. *F.T. Biddle v. Bd. of Adjustment, Vill of Spring Valley*, 316 S.W.2d 437, 442 (Tex. Civ. App.—Houston 1958, writ ref'd n.r.e.); *City of Silsbee v. Herron*, 484 S.W.2d 154, 156-157 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.). Arch Resort's project is clearly grandfathered from the application of city ordinances under both § 43.002(a)(1) and (a)(2), and the trial court erroneously denied Arch Resorts' application for temporary injunction.

### D. The City is trying to prohibit Arch Resorts from continuing to use its land following annexation.

Section 43.002 expressly prevents McKinney's attempt to "prohibit" the continuation of Arch Resorts' land use. The evidence in the record proves the City's intent to prohibit Arch Resorts' protected project under § 43.002. Mr. Quint testified that the City had taken the following actions to prevent Arch Resorts from using its Property for its intended purpose:

1. City staff communicated with nearby landowner Addison Wilson about his lawsuit against Arch Resorts (RR 47, 54).

2. City staff communicated with nearby opposing property owners who are the parents of a sitting City Council member (RR 47, 54).

- 16 -

3.  Partially in response to Arch Resorts' project, the Council enacted the March 17, 2015 ordinance extending the City's building code to the ETJ (RR 64).

4.  Partially in response to Arch Resorts' project, the Council annexed the Property on May 5, 2015 (RR 64).

5.  The City zoned the Property to a zoning district that would not allow Arch Resorts' proposed use (RR 77). Mr. Quint testified the City would likely deny any attempts by Arch Resorts to zone the Property to a district that would allow the RV resort use (RR 77).

6.  A stop work order was posted on the Property on May 28, 2015 (RR Ex. 28). No construction work has been authorized, or occurred, since that date (RR 116).

Both individually and as a totality, these City actions show a desire to prohibit Arch Resorts' use of the Property in accordance with § 43.002, TEX. LOC. GOV'T CODE. Because the trial court erred in denying the application for temporary injunction, Arch Resorts requests that the trial court be reversed and the City ordered to refrain from applying its ordinances to the Appellants' Project.

## IV. Collin County properly approved permits for Arch Resorts' project.

McKinney argues that Collin County's permit approvals were unauthorized and that Arch Resorts' project is therefore not grandfathered. Section 43.002(a)(1), TEX. LOC. GOV'T CODE, requires that the land use be "legal" on the effective date while § 43.002(a)(2) does not expressly contain a "legal" finding. Regardless, Collin County's approvals were authorized and the City's claim is without merit.

- 17 -

**A.** **The City's complaint about the validity of the County approvals represents an unauthorized attack on the County's regulatory power.**

During the hearing, the City's counsel asked Mr. Adams about the County's authority to approve development permits in the ETJ (RR 96-99). Mr. Adams responded that the County did indeed have such power (RR 97). McKinney's argument that Collin County's numerous approvals of Arch Resorts' permits were unauthorized and invalid is a prohibited collateral attack on the County's authority. The Texas Declaratory Judgment Act (the "DJA") requires that relevant government entities be made parties for claims challenging the validity of governmental orders or ordinances. TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West 2015); *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) ("For example, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute."). *See Tex. Lottery Comm'n*, 325 S.W.3d at 634-35 (explaining that the DJA "permits statutory challenges"). All governmental entities are necessary parties to such a claim. *See id.* at 634 (recognizing that "because the DJA permits statutory challenges and governmental entities may be bound by those challenges, the DJA contemplates entities must be joined in those suits").

At no point has the City filed a cause of action or named Collin County as a party (CR 444-67). Because Collin County is a necessary party in a challenge to

the permits it approved, the City's collateral attack on the County's statutory authority to approve development permits in the ETJ fails.

**B.    The City admits the County had legal authority to approve at least one of Arch Resorts' permit applications.**

Section 43.002(a)(2) simply requires a minimum of one permit application to be submitted to the County to grandfather Arch Resorts' Project from the application of municipal ordinances. According to the City, Collin County did not have general authority to issue commercial building permits to Arch Resorts (CR 527). Regardless, the City acknowledges that the County was authorized to issue permits to Arch Resorts regarding septic tank regulations and drainage issues (CR 126-9). The County's pleadings concede that the County has authority to issue building permits to ensure compliance with fire codes (CR 463).

Section 43.002(a)(2), TEX. LOC. GOV'T CODE simply requires that "one or more" permits be obtained from the County for Arch Resorts' project. There is no dispute that the County legally issued one or more permits to Arch Resorts. Therefore, the requirements of § 43.002 have been met. Because the City violated the Municipal Annexation Act, the trial court erred in denying Arch Resorts' application for temporary injunction.

## C. The RV resort project did not require plat approval by either the City or the County.

The City takes the position that Collin County's permit approvals were unauthorized because Arch Resorts was supposed to plat the Property with the City (CR 462). Chapters 212 and 232 of the Local Government Code are similar and provide authority to cities and counties respectively to require land subdividers to obtain plat approval. Arch Resorts does not challenge the City's general authority to require platting in order for a subdivision developer to sell lots in the ETJ (RR Ex. 4). Prior to the filing of this litigation, the City took the position that Arch Resorts' project did not require plat approval pursuant to Chapter 212, TEX. LOC. GOV'T CODE. On May 19, 2015 and after reviewing the proposed site plan for development of the entirety of the Property, Mr. Quint wrote that "I don't believe they will need to plat . . ." (RR, Ex. 43). Even at his deposition, Mr. Quint said he did not know if platting should be required (RR 81). Following direction from the City Attorney, Mr. Quint then claimed at the temporary injunction hearing that platting would be required (RR 81-2).

In addition to the City's admission that plat approval was not required, platting is not required for the Project as a matter of law. The City's subdivision ordinance does not expressly apply to RV resort projects like Arch Resorts' (RR, Ex. 4). The City's subdivision ordinance requires that only a mobile home park receive plat approval (RR Ex. 4, p. 3). Mr. Quint acknowledged that the

McKinney City Council had enacted an ordinance regulating mobile home, but not RV, development (RR 51).

According to case law precedent, the lack of an express provision in the subdivision ordinance requiring RV parks to obtain plat approval prohibits McKinney from impliedly imposing such a requirement. In *Rhino Real Estate Invs., Inc. v. City of Runaway Bay*, 2009 WL 2196131 (Tex. App.—Fort Worth 2009, no pet.), Rhino purchased lots in the city's ETJ which were platted by the county. The city subsequently adopted an ordinance (Ordinance 430) extending the application of its subdivision ordinance, but not building codes, to the ETJ. According to the court of appeals, the city was required (if it had the requisite authority) to expressly extend its building code requirements to the ETJ in order to force the developer to apply for building permits. *Id.* at 4.

Ordinance 430 contained a whereas clause and a section providing for building permit fees for structures in the ETJ. The city argued this one sentence made the entirety of the city's building code requirements applicable in the ETJ. According to the court of appeals, "imposing a requirement for a 'building permit fee' in the city's ETJ does not seem in any way to equate to the adoption of an entire building code in the city's ETJ." *Id.* at 5. The court ruled against the city because its subdivision ordinance did not expressly extend the building code to the ETJ. Because McKinney's subdivision ordinance does not expressly require an

RV resort development to obtain plat approval, Arch Resorts similarly was not required to plat.

The facts in this case are different from those in *Weslaco v. Carpenter*, 694 S.W.2d 601 (Tex. App.—Corpus Christi, 1985, no pet.). Weslaco's subdivision ordinance had an express provision stating that mobile home and/or RV parks were required to be platted. *Id.* at 602. McKinney's subdivision ordinance only requires mobile home parks to be platted (RR Ex. 4).

Carpenter apparently refused to obtain development permits from any jurisdiction and the court of appeals points to the need to protect the public health by regulating septic tanks. *Id.* at 604. Arch Resorts, on the other hand, willingly obtained development permits, including for septic tanks, from the County following the City's direction to Arch Resorts to obtain County permits (RR Ex. 36). The only testimony in the record is that Arch Resorts' complied with County standards and inspections which protect the public health and safety (RR 94).

Unlike mobile home parks, Arch Resorts does not enter into a lease (whether short or long term) with its customers (RR 111-2). The rental form is similar to one used by a hotel than an apartment (RR Ex. 40). Many developments that have a parking space designation do not trigger the subdivision/platting requirement. For example, marked parking spaces in a parking lot do not constitute a

subdivision. Neither do the marked stalls at a Sonic or the Coyote Drive-In Theater. Arch Resorts was not required to obtain subdivision approval from the City.

**V.      Arch Resorts is vested in the prior County permit approvals under Chapter 245, TEX. LOC. GOV'T CODE.**

The vested rights statute is found in Chapter 245 of the Local Government Code and creates a system by which property developers can rely on the land-use regulations in effect at the time "the original application for [a] permit is filed" involving a project. TEX. LOC. GOV'T CODE ANN., § 245.002(a) (West 2005); *Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 681 (Tex. App.—Austin 2004, no pet.). At the same time, because the "laws, rules, regulations, or ordinances of a regulatory agency" may change and those changes may "enhance or protect the project," it allows a permit holder to take advantage of those changes without forfeiting any of its Chapter 245 rights. TEX. LOC. GOV'T CODE ANN., § 245.002(d).

**A.      Arch Resorts' Project is clearly defined and protected under the statute.**

Chapter 245 defines a "project" as "an endeavor over which a regulatory agency exerts its jurisdiction and for which one or more permits are required to initiate, continue, or complete the endeavor." *Id.* § 245.001(3). Chapter 245 does not define "endeavor"; however, an attorney general's opinion discussing Chapter

245 stated "endeavor" is commonly defined as "the action of endeavoring; effort, or pains, directed to attain an object." Tex. Att'y Gen. Op. No. JC-0425 (2001); *see also* Black's Law Dictionary 547 (7th ed. 1999) (defining "endeavor" as "a systematic or continuous effort to attain some goal" or "to exert physical or intellectual strength toward the attainment of an object or goal"). The site plan for Arch Resorts' project for the entirety of the Property was provided in late 2014 and early 2015 to both the City and the County (RR 36, App. D). It is undisputed that the City's March 17 ordinance, annexation, zoning and stop work order all occurred after Arch Resorts had received numerous permits for land in the ETJ (RR Exs. 7-9).

An opinion with similar facts can be found in *Hartsell v. Town of Talty*, 130 S.W.3d 325 (Tex. App.—Dallas 2004, pet. den.). At the time the initial permit for Hartsell's residential subdivision project (a preliminary plat) was approved, there were no building code requirements in the ETJ. *Id.* at 328. After the Town subsequently enacted its ordinance extending its building codes to the ETJ, it filed suit to force Hartsell to submit building permit applications. According to the Dallas Court of Appeals, the homebuilders were protected from the Town's enforcement of its building codes under Chapter 245. *Id.* at 328. Similarly, Arch Resorts is protected from the Town's attempts to prohibit or adversely impact its Project under Chapter 245 TEX. LOC. GOV'T CODE.

- 24 -

**B.** *Shumaker* **does not apply to these facts.**

McKinney claims that the County permit approvals do not vest any rights to Arch Resorts as to the City's subsequent regulations in accordance with *Shumaker Enterprises, Inc. v. City of Austin*, 325 S.W.3d 812 (Tex. App.—Austin 2010, no pet.). In addition to being a "no petition" case, *Shumaker* is distinguishable on its facts from the present case.

Shumaker submitted an application with Travis County to mine a tract that was located outside of Austin's ETJ. *Id.* at 813. Before the county acted on the application, Austin's ETJ extended to overlap the tract. *Id.* Shumaker requested a determination from the city that a permit was not required from the city. After the city rejected Shumaker, the trial court and court of appeals upheld the city's decision. *Id.*

In *Shumaker*, the city did not have the option of making a decision on a permit application because the tract was located outside of its ETJ. The Property, on the other hand, was located within McKinney's ETJ. Further, McKinney intentionally refused to require permits for new development on its ETJ land (RR 52).

McKinney made a conscious decision prior to adoption of the March 17, 2015 ordinance to allow the County to make all permit decisions on unplatted land in the ETJ (RR 52, 94). Mr. Quint acknowledged that the City's policy was to not

require or accept permit submittals in the ETJ (RR 52). Prior to purchasing the Property, Arch Resorts was told by the City that no permits would be required in their ETJ (RR 110). County representatives testified that the City never opposed the County's role in granting permits in the ETJ (RR 104). During a meeting between the County and Arch Resorts, the County's Tracy Holmfeld called the City offices and confirmed that City permits would not be required for the Property (RR 128). The City knew of the ongoing development of the Property and received Arch Resorts' development plans no later than February 2015 (RR Ex. 11). Yet, the City took no official action to enforce its ordinances against Arch Resorts for almost four (4) months, at which time it posted the "stop work" order (RR Ex. 28).

In addition, *Shumaker* does not address the alternative language in § 245.002(a)(2), which is triggered when "a plan for development of real property or plat application is filed with a regulatory agency." The City received copies of the County permit approvals in February 2015 (RR, Ex. 11). These approvals included the site plan for the development of the entirety of the Property (RR Ex. 6; App. D). It is undisputed that the City had "fair notice of the project" pursuant to § 245.002(a)(1).

Similar to the § 43.002 chronological analysis, Arch Resorts applied for numerous permit approvals prior to the City's attempt to apply its development

ordinances to Arch Resort's RV resort project. The City had both constructive and actual notice prior to annexation of Plaintiff's phased plan to develop the entirety of the Property with an RV resort (RR Ex. 11, App. D). Thus, the City's ordinances cannot be applied to Arch Resorts' project pursuant to either Chapter 245 or § 43.002, TEX. LOC. GOV'T CODE.

## VI. The City cannot stop Arch Resorts' project on the grounds that it should have submitted permits to the City rather than the County.

The City has taken the position that Arch Resorts was required to obtain permits because the City could theoretically have applied its building code to the ETJ prior to March 17, 2015 (CR 462-4). As a result, Arch Resorts should have submitted applications to the City rather than the County (CR 462-4). Mr. Quint testified, however, that the City's policy was to not require development permits on unplatted land in the ETJ prior to March 17, 2015 (RR 52).

### A. A building code cannot be impliedly extended to the ETJ.

The City argues that it has the power to extend its building code to the ETJ by implication under its platting ordinance even though the ordinance even though the ordinance does not expressly so state (RR Ex. 84). This issue was addressed by the Fort Worth Court of Appeals in the *Runaway Bay* case: "Thus, even assuming the City's argument that it possesses authority under Section 212.002 to extend building code ordinances to its ETJ, … the City must do so by ordinance as set forth in Section 212.003." 2009 Tex. App. LEXIS 5706 *4. According to the

City's pleadings, it enacted an ordinance in 2013 which enacted the Uniform Building Code and extended its applicability to the ETJ (RR Ex. 38). During extensive examination by counsel and the trial court judge, however, Mr. Quint admitted that this ordinance merely stated that the City had this authority but did not actually extend the building code to the ETJ (RR 62-3).

### B. The City/County Plat Approval Agreement did not mandate City permit approval.

In 2002, McKinney and the County entered into a City/County Plat Approval Agreement in accordance with § 242.001, TEX. LOC. GOV'T CODE (RR 45, Ex. 5). On June 15, 2015, several mayors of municipalities in Collin County asked Collin County Judge Self to recognize that the City/County agreement language of "related permits" necessarily means building permits (RR Ex. 31). The County Commissioners responded to the McKinney Mayor on June 22, 2015 (RR Ex. 32). Because the language did not state that the City had the express authority to require building permits in the ETJ, McKinney asked Collin County to amend its interlocal agreement to include this language (RR Ex. 32). According to the June 22, 2015, letter, the Collin County Commissioners refused to honor the City's request because of "legal concerns about the City's authority to enforce its building code and construction-related ordinances on vertical construction in the ETJ" (RR, Ex. 32). The City can cite to no legal precedent for the proposition that "related permits" refers to vertical rather than

horizontal construction. Because Chapter 212 does not expressly authorize the issuance of City permits in the ETJ and the City/County agreement specifically refers to "plat approval", the County, not the City, had authority to issue permits in unincorporated areas on unplatted land.

## VII. A home-rule municipality cannot impose its building, fire and construction-related codes in its extraterritorial jurisdiction.

Arch Resorts agrees with McKinney that all cities have the authority to extend their subdivision ordinances to the ETJ pursuant to Chapter 212, TEX. LOC. GOV'T CODE. The platting statute does not expressly state that cities have the authority to require permits for vertical construction in the ETJ, however, and such authority should not be implied.

### A. *Bizios* does not address home rule authority.

The Fort Worth Court of Appeals recently held that general law towns lacked the authority to extend building codes to the ETJ in *Bizios v. Town of Lakewood Village*, 453 S.W.3d 598 (Tex. App.—Fort Worth 2014, pet. pending). This appeal is pending before the Texas Supreme Court. Because Lakewood Village is a general law town, as opposed to a home rule municipality, that opinion focuses on the legislative powers of general law towns. Lakewood Village as a general law town was held to lack statutory authority under Chapter 212, TEX. LOC. GOV'T CODE to extend its building code to the ETJ. Similar to Arch Resorts, Bizios applied for and received the necessary development permits from the county

to build.  453 S.W.3d at 599.  Lakewood Village, like McKinney, argued that it had inherent authority under §§ 212.002, 212.003, TEX. LOC. GOV'T CODE, to require building permits.  *Id.* at 599.  The authority granted to cities under Chapter 245 is "construed strictly against the authority of the municipality and in favor of the landowner."  *Id.*  Without express statutory authority, Lakewood Village was prohibited from extending its building code to the ETJ.  *Id.* at 604.  The Fort Worth Court of Appeals did not expressly rule on whether a home rule city can extend its building code to the ETJ.  *Id.* at 604.

**B.  §§ 212.002 and .003, TEX. LOC. GOV'T CODE, do not expressly authorize cities to extend their building codes to the ETJ.**

Under Subchapter A of Chapter 212, a plat is only required to be submitted and approved when a tract of land is subdivided.  There is no indication that the Legislature intended to address building permits in Subchapter A of the platting statute and there is no express authority stated in the statute.  Adding verbiage to statutes by implication was expressly forbidden by the Texas Supreme Court in *M. Fitzgerald v. Advanced Spine Fixation*, 996 S.W.2d 865, 867 (Tex. 1999).  Because Arch Resorts' property is not being subdivided, there is no express or implied authority under the Texas platting statute.

Sections 212.002 and .003 of the Texas Local Government Code are directed at the regulation of plats and subdivisions, not building of structures.  In fact, Subchapter A of Chapter 212 is entitled "Regulation of Subdivisions."  This

- 30 -

subchapter says nothing about building structures in general or permits in specific and therefore does not provide the requisite authority.

Subchapter B, in contrast, is titled "Regulation of Property Development," with "development" defined as "the new construction or the enlargement of any exterior dimension of any building, structure, or improvement." TEX. LOC. GOV'T CODE § 212.043(1). This subchapter, moreover, expressly provides that "[t]his subchapter does not authorize the municipality to require municipal building permits or otherwise enforce the municipality's building code in its extraterritorial jurisdiction." *Id*. at § 212.049. Subchapter B prohibits the City's extension of its building codes to the ETJ.

By differentiating between land development and vertical construction, the Legislature's apparent intent was to not allow cities to require building permits in the ETJ. Sections 212.002 and .003 do not authorize home rule cities to extend their building codes to the ETJ.

### C. § 242.001, TEX. LOC. GOV'T CODE does not expressly authorize McKinney to extend its building code to the ETJ.

The City argues that the March 2003 City-County Plat Approval Argument authorizes McKinney to extend its building code to the ETJ (RR 5). Section 1 of the Agreement states that "the City shall be granted exclusive jurisdiction to regulate all subdivision plats and approve all related permits in its ETJ" (RR 5). This language is consistent with § 242.001(c), TEX. LOC. GOV'T CODE, and the

City has taken an expansive view by arguing that "related permits" refers to building permits.

The primary objective of House Bill 1445 in 2001 when § 242.001 was originally enacted to eliminate the "unnecessary expenses and delays for property owners because municipalities and counties have different standards, requirements, and levels of authority over subdivisions." (Bill analysis, H.B. 1445, 2001, App. E). In order to avoid the confusion and expense created by overlapping platting jurisdictions, this legislation requires cities and counties to agree about the manner with which subdivision plats will be approved within the extraterritorial jurisdictions of municipalities. TEX. LOC. GOV'T CODE §242.001(d). The statute authorizes cities and counties to agree to a system that would simplify the administration of subdivision plats in the extraterritorial jurisdiction in one of four ways:

**Option 1:** Agreeing to allow the municipality exclusive jurisdiction as authorized by Chapter 212 of the Texas Local Gov't Code ("Chapter 212");

**Option 2:** Agreeing to grant the county exclusive jurisdiction over subdivision plats as authorized by Chapter 232 of the Texas Local Gov't Code;

**Option 3:** Agreeing to physical apportionment of the extraterritorial area with some portions to be governed by the city and others to be governed by the county; or

**Option 4:** Agreeing to establish an office responsible for submittal and approval of plat applications using a "consolidated and consistent

- 32 -

set of regulations" as authorized by Chapter 212 and Chapter 232.

The intent of the statute with respect to permits not specifically related to subdivision land development was addressed in Texas Attorney General Opinion No. GA-0366. At issue was whether a county could assess a municipal drainage charge under the § 242 interlocal agreement. Comal County argued that the drainage charge would be "a subdivision related permitting activity." The Attorney General's office disagreed. According to the opinion, the statute is intended to clarify which local regulations are "related to plats, subdivision construction plans, and subdivisions of land." This phrase was interpreted as relating specifically to land subdivisions. Chapter 402 was held to not relate "specifically to plat-related regulations nor specifically to subdivisions."

There is no case law or legislative history supporting the City's position. The better argument is that "related permits" are those related to the subdivision process such as infrastructure construction (streets, water lines, etc.). In fact, the title of § 242.001 is "Regulation of Subdivisions in Extraterritorial Jurisdiction Generally." This indicates that the "related permits" do not refer to vertical improvements such as structures, but only to construction related to subdivision development.

**D. § 214.904(a), TEX. LOC. GOV'T CODE does not expressly authorize cities to extend their building codes to the ETJ.**

Section 214.904(a) of the Texas Local Government Code refers to the issuance of building permits "in the municipality or its extraterritorial jurisdiction." But this statutory provision provides neither express nor implied authority for a city to extend its building codes to its ETJ similar to Sections 216.003 and 216.902 of the Texas Local Government Code. There is no statutory language or legislative history indicating legislative intent for Section 214.904(a) to expand a city's authority to allow it to extend its building code to its ETJ.

House Bill 265 was passed in 2005 to create § 214.904. The bill was intended to prevent cities from arbitrarily delaying taking action on permit applications. (Bill Analysis, H.B. 265, 2005, App. F). These types of applications could include non-vertical construction such as septic system, wastewater capacity, asbestos abatement, 911 address assignment, water hookup, environmental cleanup, fire alarm, floodplain development, sign permits, curb cut and pool construction. There is no legislative history indicating that § 214.904 was intended to grant cities the authority to extend their building codes to the ETJ.

There are various scenarios which the Legislature could have considered in enacting the statute that did not involve cities unilaterally enforcing their building codes in the ETJ. While the statute can be implied to mean that some municipalities within the State may be requiring a permit to improve a building or

"other structure," there are fact situations that might be applicable other than a city

extending its building code to the ETJ for all purposes:

- Land in the ETJ subject to a development agreement under § 212.172, TEX. LOC. GOV'T CODE, which allows a city to require building permits.

- Land in the ETJ subject to an industrial district agreement under § 42.044, TEX. LOC. GOV'T CODE which can require permitting.

- Land in the ETJ subject to a planned unit district agreement under § 42.046, TEX. LOC. GOV'T CODE which can require permitting.

- Land in the ETJ with a special district agreement under § 42.042, TEX. LOC. GOV'T CODE which can require permitting.

- Land subject to limited purpose annexations under § 43.121, TEX. LOC. GOV'T CODE which can require permitting. Section 43.131 states that a city's extraterritorial jurisdiction is not extended by a limited purpose annexation. The Legislature could have considered land subject to limited purpose annexation as being equivalent to land in the ETJ.

- "Other structures" could refer to billboards. General law towns and home rule cities are given express authority to require building permits for signs in the ETJ. § 216.902, TEX. LOC. GOV'T CODE.

- The Legislature may have acknowledged that cities were extending building codes to the ETJ pursuant to *City of Lucas v. North Texas Municipal Water District*, 724 S.W.2d 811 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) and were awaiting future court decisions to clarify the authority issue.

*Lucas* is the only appellate opinion which states that a town can extend its

building codes to the ETJ through Chapter 212, TEX. LOC. GOV'T CODE. The Fort

Worth Court of Appeals articulated in *Bizios* the reasons that the *Lucas* holding no

longer applies. 453 S.W.3d at 604. Section 212.049 was added with Subchapter B

of Chapter 212 of the Local Government Code after *Lucas*. Subchapter B of

Chapter 212, Local Government Code, relates to development plats and development is defined as "the new construction or the enlargement of an exterior dimension of any building . . ." Subchapter A, on the other hand, is related solely to the regulation of subdivisions as the courts commonly define subdivisions. Unlike Subchapter A of Chapter 212, § 212.049 expressly states the Legislature's intent on the issue: "This subchapter does not authorize the municipality to require municipal building permits . . . in its extraterritorial jurisdiction." Because Subchapter A does not expressly address building permits like Subchapter B, the power to extend building codes by subdivision to the ETJ should not be implied by the court of appeals.

## VIII. An injunction in Arch Resorts' favor would not disserve the public interest.

If a home rule city wants to regulate development, then it has the ability to annex property pursuant to Chapter 43, Tex. Loc. Gov't Code. The city would then have to provide municipal services to the property and allow its residents to vote in city elections. Otherwise, the city will regulate private property and require builders and developers to pay potentially excessive building permit fees without providing municipal services or voting rights.

In addition to its statutory construction conundrum, the City cannot articulate legitimate reasons for applying its building code to its ETJ. The facile reasons given by the city are easily addressed:

1.   Safe construction:   The city argues that its building permit process provides for safe construction of structures.  No argument there.  The evidence shows, however, that the county's building permit process results in safe construction as well (RR 89-91, 94).

2.   Public health and safety:   Similar to the safe construction argument, the City argues it is a matter of state policy to protect the health, safety and welfare of persons residing near a municipality (CR 530).  When the City does not provide typical municipal services to maintain the streets, provide water or sewer service, or provide fire or police service, it seems disingenuous for the City to claim that its rationale is to extend its police power to the ETJ (RR 48-9).  Further, the County's regulatory permitting and inspection services also protects the public health and safety (RR 94).

3.   Public interest v. private interest:   Section 311.021(5), Tex. Gov't Code, provides that during the statutory construction process the public interest is favored over a private interest.  "Public interest," however, does not necessarily mean the "government's" interest.  "Public" means the members of a community or group.  Webster's Third New International Dictionary (1981), p. 1836.

An example of the distinction can be found in *In re B.S.H.*, 308 S.W.3d 76 (Tex. App.—Fort Worth 2009, no pet.).  The statute being construed by the court was § 154.014 of the Family Code which helps determine how excess child

support payments should be applied and the right of reimbursement in § 154.012. *Id.* at 81. In this case, the court of appeals equated the "public" interest to be "the best interest of the children of the state." *Id.* at 81. Reconciling the two statutes at issue was found to further "the public interest in promoting the best interest of the children of this State." *Id.*

Arch Resorts' public interest is the same as the pool of landowners and residents in the unincorporated areas of the county who oppose attempted local government intrusion into their lives, particularly when no governmental services or benefits are provided. The true reasons for cities' extending the building code to the ETJ are (a) money, and (b) power. Building permit fees are a tremendous potential revenue source. McKinney was unable to require Arch Resorts to pay the City building permit fees which were instead collected by the County (RR Ex. 38).

The City admits that it extended its codes to the ETJ to prevent the use of the Property for an upscale RV resort (RR 55). This action clearly violates § 212.003(a)(i), TEX. LOC. GOV'T CODE. By imposing overly burdensome regulations the City of McKinney's goal was to make it impossible for the property owner to finish construction and start operating its project in accordance with the clear intent of the Texas Legislature. There is no scenario in which the City's actions could be construed as benefitting the general public. Because Arch Resorts

showed probable success on the merits of its causes of action, the trial court erred in denying Arch Resorts' application for temporary injunction.

## IX. Arch Resorts will suffer probable, imminent and irreparable harm due to the City's actions.

The third temporary injunction element is for Arch Resorts to show "probable, imminent, and irreparable harm." Arch Resorts has not worked on the property since the posting of the May 27 stop work order, thus meeting the "probable" and "imminent" requirements. Trial courts exercise discretion in determining what acts constitute imminent harm. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("The decision to grant or deny a temporary writ of injunction lies in the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of that discretion."). It is undisputed that Arch Resorts faced probable and imminent harm resulting from the City's shutting down of its Project.

Injunctive relief will be granted where the party seeking injunctive relief demonstrates irreparable injury which appears to be the basis of the trial court's decision. *See North Cypress Medical Center Operating Co. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "An injury is considered irreparable if the party cannot be adequately compensated in damages, or if those damages are incapable of calculation." *Id.* Generally, money damages are inadequate to compensate an injured party for the loss of property deemed to be

"unique or irreplaceable." *Id.* The "uniqueness" rule is most often applied where the disputed property is real estate. *Id.* "It is well established law that each and every piece of real estate is unique." *Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.—Houston [14th Dist.] 1982, no writ). *Butnaru v Ford Motor Co.*, 84 S.W.3d 198, 211; *see, e.g., Lavigne v. Holder*, 186 S.W.3d 625, 629 (Tex. App.—Fort Worth 2006, no pet.); *Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.—Houston [14th Dist.] 1982, no writ). Because the Property is unique real estate, Arch Resorts' injuries are considered irreparable.

While a private individual must prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in order to obtain a temporary injunction, cities do not have to prove up the third element. A court will grant a temporary injunction in favor of a city so long as the city can show a "probable right of recovery." *Coastal Marine Service. v. City of Port Neches*, 11 S.W.3d 509, 515 (Tex. App.—Beaumont 2000). *See Swinney v. San Antonio*, 483 S.W.2d 556, 558-59 (Tex. Civ. App.—San Antonio 1972) (granting temporary injunction because city showed a probable right and probable injury to that right"), *McKee v. Mt. Pleasant*, 328 S.W.2d 224, 228-29 (Tex. Civ. App.—Texarkana 1959) (Upholding temporary injunction where "the city presented a case of probable right and probable injury.").

The trial court denied both parties' applications for temporary injunction (CR 554-5). One explanation for the rulings is that the trial court agreed that Arch Resorts should prevail on the merits but did not prove up the irreparable harm element. If the trial court was of the opinion that the City should prevail on the merits then it would have ruled for the City because the City was not required to show irreparable harm.

Arch Resorts clearly proved irreparable harm at trial. Specifically the City's work and operational stoppage results in the following injury to Arch Resorts:

1.      Damages to the Arch Resorts' reputation in the community (RR 117).

2.      Potentially missing the market cycle (RR 116).

3.      Loss of rental income (RR 117).

4.      Expenses such as property taxes and mortgage interest payments (RR 117).

5.      Gravel piles that may go bad because the gravel cannot be spread out over the pads (RR 117).

6.      Emotional pain suffered by Mr. and Mrs. Venkatesan (RR 116).

While the potential damages are substantial, they are difficult to quantify (RR 118).

Arch Resorts also has proven up its irreparable harm because there is no adequate remedy at law for damages. In other words, the applicant "cannot be

adequately compensated in damages or . . . the damages cannot be measured by any certain pecuniary standard. No adequate remedy at law exists if damages are incapable of calculation or if the defendant is incapable of responding in damages." *Tex. Indus. Gas v. Phx. Metallurgical Corp*., 828 S.W.2d 529, 533 (Tex. App.—Houston [1st Dist.] 1992, no writ). Generally, money damages may be inadequate to compensate an injured party for the loss of property deemed to be legally 'unique' or irreplaceable. *N. Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Further, there are legal hurdles to a private property owner like Arch Resorts from collecting damages during the pendency of a temporary injunction from a governmental entity like the City. Even if Arch Resorts were to prevail at trial, it could be difficult to obtain damages from the City for the losses suffered in the interim. Thus, Arch Resorts does not have an adequate remedy at law. This issue was recently addressed by the Dallas Court of Appeals in *CPM Trust v. City of Plano*, 461 S.W.3d 661 (Tex. App.—Dallas, no pet.). In this case, a billboard owner successfully appealed the city's refusal to allow the damaged billboard to be rebuilt pursuant to municipal ordinances. The plaintiff also requested temporary takings damages from the city for its losses between the date the billboard was damaged and when it would be allowed to legally rebuilt. *Id.* at 673. The Dallas Court of Appeals refused to allow the billboard company to obtain these temporary

damages. *Id.* at 693. Because there are legal hurdles preventing Arch Resorts from recouping temporary damages from the City, it has no adequate remedy at law and has suffered imminent and irreparable harm.

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The status quo is defined as the last actual, peaceable, noncontested status that preceded the pending controversy. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). "If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists after the action." *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). In determining whether to order a temporary injunction, the court balances the equities of the parties and the resulting conveniences and hardships. *Surko Enters., Inc. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 225-26 (Tex. App.—Houston [1st Dist.] 1989, no writ). The last actual, peaceable status prior to the stop work order was development of the Property in accordance with the County approved permits.

A temporary injunction preventing a city from enforcing its ordinances was recently upheld in *Village of Tiki Island v. Ronquille,* 463 S.W.3d 562 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Several homeowners in the city rented

out their houses. *Id.* at 565. The city passed an ordinance prohibiting short-term rentals and issued citations. *Id.* The homeowners introduced evidence that they would suffer loss of rental income (similar to Arch Resorts) if the ordinance was enforced. *Id.* at 566. A temporary injunction ordering the city to cease and desist enforcing the ordinance was upheld by the court of appeals. *Id.* at 562.

Arch Resorts similarly is being prevented from renting its RV pads due to the illegal actions of the City of McKinney. Because there is probable, imminent and irreparable injury, Arch Resorts should be granted its requested temporary injunctive relief.

## CONCLUSION AND PRAYER

The trial court erred because Arch Resorts presented sufficient evidence to prove a probable right of recovery as to its causes of action. Further, Arch Resorts proved up probable, imminent and irreparable injury due to the City's actions. The trial court erred in denying Arch Resorts' application for temporary injunction.

Appellant/Cross-Appellee Arch Resorts prays that this Court reverse the trial court and enter the requested temporary injunction order, award Arch Resorts costs and attorney's fees, and grant to Appellants such other and further relief at law and equity to which they may show themselves justly entitled.

Respectfully submitted,

WINSTEAD PC
Arthur J. Anderson
State Bar No. 01165957
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas  75201
(214) 745-5745 – Phone
(214) 745-5390 – Fax
aanderson@winstead.com

By:   */s/ Arthur J. Anderson*
    ONE OF COUNSEL

**ATTORNEYS FOR APPELLANT/
CROSS-APPELLEE ARCH RESORTS,
LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2015, a true and correct copy of the foregoing was served via the Court's electronic filing system to the following counsel of record:

Robert Brown
Brown & Hofmeister, LLP
740 East Campbell Road
Suite 800
Richardson, TX  75081

*/s/ Arthur J. Anderson*
ONE OF COUNSEL

# CERTIFICATE OF COMPLIANCE WITH RULE 9.4

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(4), I hereby certify that the above styled document contains 10,597 words, excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, signature, proof of service, certification, certificate of compliance, and appendix. Counsel is relying on a word count computer program used to prepare the document.

*/s/ Arthur J. Anderson*
ONE OF COUNSEL

## APPENDIX

**TAB A:** Order Denying Arch Resort's Application for Temporary Injunction

**TAB B:** § 43.002, TEX. LOC. GOV'T CODE

**TAB C:** Chapter 245, TEX. LOC. GOV'T CODE

**TAB D:** Site Plan

**TAB E:** Bill Analysis, H.B. 1445 (2001)

**TAB F:** Bill Analysis, H.B. 265 (2005)

4833-8817-5913v.4 □58022-1 11/2/2015

# TAB A

No. 219-01855-2015

| | | |
|---|---|---|
| ARCH RESORTS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff and Counter-Defendant,* | § | |
| | § | |
| v. | § | OF COLLIN COUNTY, TEXAS |
| | § | |
| THE CITY OF MCKINNEY, | § | |
| TEXAS, | § | |
| | § | 219TH JUDICIAL DISTRICT |
| *Defendant and Counter-Plaintiff.* | § | |

## ORDER DENYING ARCH RESORTS' APPLICATION FOR TEMPORARY INJUNCTION

On August 21, 2015, the Court heard and considered the Application for Temporary Injunction ("Application") filed by Plaintiff and Counter-defendant Arch Resorts, L.L.C.. Having considered the Application, the pleadings, the testimony and evidence admitted at the hearing, and the arguments of counsel, the Court is of the opinion the Plaintiff failed to prove it was entitled to its requested relief, and the Application should be denied. It is therefore ORDERED, ADJUDGED, and DECREED that the Application is hereby DENIED.

SIGNED this _24th_ day of _August_____, 2015.

_____
JUDGE PRESIDING

# TAB B

CIPAL GOVERNMENT
Title 2

EXATION

Annex for Limited Pur-

an.

tion.

for Office, and Taxing

Limited Purposes Along

ansion]

me-Rule Municipality.
w Municipality.
-Law Municipality.
ea in Certain Municipali-

ON STATUS

nsion]

PROCEDURES FOR
RTAIN COUNTIES

nsion]

ISIONS

nexation is Presumed.
nt Domain on Inaccessi-

Rates.

**Section**

43.906.    Voting Rights After Annexation.
43.907.    Effect of Annexation on Colonias.

## SUBCHAPTER A.   GENERAL PROVISIONS

### § 43.001.   Definition

In this chapter, "extraterritorial jurisdiction" means extraterritorial jurisdiction as determined under Chapter 42.

Acts 1987, 70th Leg., ch. 149, § 1, eff. Sept. 1, 1987.

#### Revisor's Note

Each reference to "extraterritorial jurisdiction" in the source law for this chapter clearly is a reference to the term as it is determined under V.A.C.S. Article 970a. The provisions of Article 970a that relate to the determination of extraterritorial jurisdiction are revised by Chapter 42. As a result, this section is added as a convenient way of ensuring that the term is given the same meaning in this chapter that it is given in the source law.

#### Research References

**Encyclopedias**
TX Jur. 3d Municipalities § 74, Authority of Legislature.
TX Jur. 3d Municipalities § 75, Authority of Legislature--Delegation of Power to Home-Rule Cities.

TX Jur. 3d Municipalities § 77, Consent of Residents--Home-Rule and General-Law Cities.

### § 43.002.   Continuation of Land Use

(a) A municipality may not, after annexing an area, prohibit a person from:

(1) continuing to use land in the area in the manner in which the land was being used on the date the annexation proceedings were instituted if the land use was legal at that time; or

(2) beginning to use land in the area in the manner that was planned for the land before the 90th day before the effective date of the annexation if:

(A) one or more licenses, certificates, permits, approvals, or other forms of authorization by a governmental entity were required by law for the planned land use; and

(B) a completed application for the initial authorization was filed with the governmental entity before the date the annexation proceedings were instituted.

(b) For purposes of this section, a completed application is filed if the application includes all documents and other information designated as required by the governmental entity in a written notice to the applicant.

(c) This section does not prohibit a municipality from imposing:

219

(1) a regulation relating to the location of sexually oriented businesses, as that term is defined by Section 243.002;

(2) a municipal ordinance, regulation, or other requirement affecting colonias, as that term is defined by Section 2306.581, Government Code;

(3) a regulation relating to preventing imminent destruction of property or injury to persons;

(4) a regulation relating to public nuisances;

(5) a regulation relating to flood control;

(6) a regulation relating to the storage and use of hazardous substances; or

(7) a regulation relating to the sale and use of fireworks.

(d) A regulation relating to the discharge of firearms or other weapons is subject to the restrictions in Section 229.002.

Added by Acts 1999, 76th Leg., ch. 1167, § 2, eff. Sept. 1, 1999. Amended by Acts 2005, 79th Leg., ch. 18, § 3, eff. May 3, 2005.

### Historical and Statutory Notes

Section 17(d) and (e) of Acts 1999, 76th Leg., ch. 1167 provides:

"(d) The changes in law made by this Act in Sections 43.002, 43.054, 43.0545, 43.0546, 43.056(b), (c), (e), (f), (g), (l), (m), (n), and (o), 43.0565, 43.0712, 43.0751, 43.121(a), 43.141(c), 43.148, 43.905, and 43.906, Local Government Code, as added or amended by this Act, apply to the annexation of an area that is not included in the municipality's annexation plan during the period beginning December 31, 1999, and ending December 31, 2002, if the first public hearing required as part of the annexation procedure is conducted on or after September 1, 1999.

"(e) The changes in law made by this Act in Sections 43.002, 43.054, 43.0545, 43.0546, 43.056(b), (c), (e), (f), (g), (l), (m), (n), and (o), 43.0565, 43.0712, 43.121(a), 43.141(c), 43.148, 43.905, and 43.906, Local Government Code, as added or amended by this Act, apply to the

annexation of an area that is not required to be included in a municipal annexation plan under Section 43.052, Local Government Code, as amended by this Act, if the first hearing notice required by Section 43.063, Local Government Code, as added by this Act, is published on or after September 1, 1999."

**Former Sections:**

A former section, relating to the effect of the chapter on limited-purpose annexation, was repealed by Acts 1989, 71st Leg., ch. 1, § 3(l), to conform to Acts 1987, 70th Leg., ch. 1077, § 4, was derived from:

Acts 1963, 58th Leg., p. 447, ch. 160, art. I.
Acts 1981, 67th Leg., p. 3142, ch. 827, § 4.
Acts 1985, 69th Leg., p. 4953, ch. 649, § 2.
Vernon's Ann.Civ.St. art. 970a, § 10, subsec. C.
Acts 1987, 70th Leg., ch. 149, § 1.

### Library References

Municipal Corporations ☞38.
Westlaw Topic No. 268.
C.J.S. Municipal Corporations §§ 45, 53.

### Research References

**Treatises and Practice Aids**

Brooks, 22 Tex. Prac. Series § 1.13, Territory -- Annexation.

[Sections 43.003 to 43.020   reserved for expansion]

---

SUBCHAPTER

**Law J**

Annual survey of Texas law:

Annexation. Charles L. Ba
chael H. Collins, 35 Sw.L
Harvey Wingo, 23 Sw.L.J.
Alex Bickley, 24 Sw.L.J. 20
Local government. Harvey
L.J. 187 (1971); H. Lou
Sw.L.J. 213 (1972); Charl
34 Sw.L.J. 453 (1980); C

**§ 43.021. Authority of
Other Actic**

A home-rule municipalit as may be provided by the the procedural rules prescr

(1) fix the boundaries

(2) extend the bounda the municipality; and

(3) exchange area witl

Acts 1987, 70th Leg., ch. 149,

V.A.C.S. Article 1175 is to the Texas Constitution. a "home-rule municipalit uniformity.

**Prior Laws:**
Acts 1913, 33rd Leg., p. 307, §
Rev.Civ.St.1911, art. 1096d.

Annexation of area qualified fc authority of municipality, s
Home rule municipality, generall Ann.Const. Art. 11, § 5.

Municipal Corporations ☞29(2
Westlaw Topic No. 268.

# TAB C

LOCAL GOVERNMENT CODE

TITLE 7. REGULATION OF LAND USE, STRUCTURES, BUSINESSES, AND RELATED ACTIVITIES

SUBTITLE C. REGULATORY AUTHORITY APPLYING TO MORE THAN ONE TYPE OF LOCAL GOVERNMENT

CHAPTER 245. ISSUANCE OF LOCAL PERMITS

Sec. 245.001.  DEFINITIONS.  In this chapter:

(1)  "Permit" means a license, certificate, approval, registration, consent, permit, contract or other agreement for construction related to, or provision of, service from a water or wastewater utility owned, operated, or controlled by a regulatory agency, or other form of authorization required by law, rule, regulation, order, or ordinance that a person must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought.

(2)  "Political subdivision" means a political subdivision of the state, including a county, a school district, or a municipality.

(3)  "Project" means an endeavor over which a regulatory agency exerts its jurisdiction and for which one or more permits are required to initiate, continue, or complete the endeavor.

(4)  "Regulatory agency" means the governing body of, or a bureau, department, division, board, commission, or other agency of, a political subdivision acting in its capacity of processing, approving, or issuing a permit.

Added by Acts 1999, 76th Leg., ch. 73, Sec. 2, eff. May 11, 1999.
Amended by:
Acts 2005, 79th Leg., Ch. 6 (S.B. 848), Sec. 1, eff. April 27, 2005.


Sec. 245.002.  UNIFORMITY OF REQUIREMENTS.  (a)  Each regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any

orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time:

   (1) the original application for the permit is filed for review for any purpose, including review for administrative completeness; or

   (2) a plan for development of real property or plat application is filed with a regulatory agency.

  (a-1) Rights to which a permit applicant is entitled under this chapter accrue on the filing of an original application or plan for development or plat application that gives the regulatory agency fair notice of the project and the nature of the permit sought.  An application or plan is considered filed on the date the applicant delivers the application or plan to the regulatory agency or deposits the application or plan with the United States Postal Service by certified mail addressed to the regulatory agency.  A certified mail receipt obtained by the applicant at the time of deposit is prima facie evidence of the date the application or plan was deposited with the United States Postal Service.

  (b) If a series of permits is required for a project, the orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for consideration of all subsequent permits required for the completion of the project.  All permits required for the project are considered to be a single series of permits.  Preliminary plans and related subdivision plats, site plans, and all other development permits for land covered by the preliminary plans or subdivision plats are considered collectively to be one series of permits for a project.

  (c) After an application for a project is filed, a regulatory agency may not shorten the duration of any permit required for the project.

  (d) Notwithstanding any provision of this chapter to the contrary, a permit holder may take advantage of recorded subdivision plat notes, recorded restrictive covenants required by a regulatory agency, or a change to the laws, rules, regulations, or ordinances of a regulatory agency that enhance or protect the project, including changes that lengthen the effective life of the permit after the date

the application for the permit was made, without forfeiting any rights under this chapter.

(e)   A regulatory agency may provide that a permit application expires on or after the 45th day after the date the application is filed if:

(1)   the applicant fails to provide documents or other information necessary to comply with the agency's technical requirements relating to the form and content of the permit application;

(2)   the agency provides to the applicant not later than the 10th business day after the date the application is filed written notice of the failure that specifies the necessary documents or other information and the date the application will expire if the documents or other information is not provided; and

(3)   the applicant fails to provide the specified documents or other information within the time provided in the notice.

(f)   This chapter does not prohibit a regulatory agency from requiring compliance with technical requirements relating to the form and content of an application in effect at the time the application was filed even though the application is filed after the date an applicant accrues rights under Subsection (a-1).

(g)   Notwithstanding Section 245.003, the change in law made to Subsection (a) and the addition of Subsections (a-1), (e), and (f) by S.B. No. 848, Acts of the 79th Legislature, Regular Session, 2005, apply only to a project commenced on or after the effective date of that Act.

Added by Acts 1999, 76th Leg., ch. 73, Sec. 2, eff. May 11, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 6 (S.B. 848), Sec. 2, eff. April 27, 2005.


Sec. 245.003.  APPLICABILITY OF CHAPTER.  This chapter applies only to a project in progress on or commenced after September 1, 1997.  For purposes of this chapter a project was in progress on September 1, 1997, if:

(1)   before September 1, 1997:

(A)  a regulatory agency approved or issued one or more permits for the project;  or

(B)  an application for a permit for the project was filed with a regulatory agency;  and

(2)  on or after September 1, 1997, a regulatory agency enacts, enforces, or otherwise imposes:

(A)  an order, regulation, ordinance, or rule that in effect retroactively changes the duration of a permit for the project;

(B)  a deadline for obtaining a permit required to continue or complete the project that was not enforced or did not apply to the project before September 1, 1997;  or

(C)  any requirement for the project that was not applicable to or enforced on the project before September 1, 1997.

Added by Acts 1999, 76th Leg., ch. 73, Sec. 2, eff. May 11, 1999.


Sec. 245.004.  EXEMPTIONS.  This chapter does not apply to:

(1)  a permit that is at least two years old, is issued for the construction of a building or structure intended for human occupancy or habitation, and is issued under laws, ordinances, procedures, rules, or regulations adopting only:

(A)  uniform building, fire, electrical, plumbing, or mechanical codes adopted by a recognized national code organization; or

(B)  local amendments to those codes enacted solely to address imminent threats of destruction of property or injury to persons;

(2)  municipal zoning regulations that do not affect landscaping or tree preservation, open space or park dedication, property classification, lot size, lot dimensions, lot coverage, or building size or that do not change development permitted by a restrictive covenant required by a municipality;

(3)  regulations that specifically control only the use of land in a municipality that does not have zoning and that do not affect landscaping or tree preservation, open space or park dedication, lot size, lot dimensions, lot coverage, or building size;

(4)  regulations for sexually oriented businesses;

(5)   municipal or county ordinances, rules, regulations, or other requirements affecting colonias;

(6)   fees imposed in conjunction with development permits;

(7)   regulations for annexation that do not affect landscaping or tree preservation or open space or park dedication;

(8)   regulations for utility connections;

(9)   regulations to prevent imminent destruction of property or injury to persons from flooding that are effective only within a flood plain established by a federal flood control program and enacted to prevent the flooding of buildings intended for public occupancy;

(10)   construction standards for public works located on public lands or easements; or

(11)   regulations to prevent the imminent destruction of property or injury to persons if the regulations do not:

(A)   affect landscaping or tree preservation, open space or park dedication, lot size, lot dimensions, lot coverage, building size, residential or commercial density, or the timing of a project; or

(B)   change development permitted by a restrictive covenant required by a municipality.

Added by Acts 1999, 76th Leg., ch. 73, Sec. 2, eff. May 11, 1999. Amended by Acts 2003, 78th Leg., ch. 646, Sec. 1.
Amended by:

Acts 2005, 79th Leg., Ch. 31 (S.B. 574), Sec. 1, eff. September 1, 2005.


Sec. 245.005.  DORMANT PROJECTS.  (a)  After the first anniversary of the effective date of this chapter, a regulatory agency may enact an ordinance, rule, or regulation that places an expiration date on a permit if as of the first anniversary of the effective date of this chapter:  (i) the permit does not have an expiration date; and (ii) no progress has been made towards completion of the project.  Any ordinance, rule, or regulation enacted pursuant to this subsection shall place an expiration date of no earlier than the fifth anniversary of the effective date of this chapter.

(b)   A regulatory agency may enact an ordinance, rule, or regulation that places an expiration date of not less than two years on an individual permit if no progress has been made towards completion of the project.  Notwithstanding any other provision of this chapter, any ordinance, rule, or regulation enacted pursuant to this section shall place an expiration date on a project of no earlier than the fifth anniversary of the date the first permit application was filed for the project if no progress has been made towards completion of the project.  Nothing in this subsection shall be deemed to affect the timing of a permit issued solely under the authority of Chapter 366, Health and Safety Code, by the Texas Commission on Environmental Quality or its authorized agent.

(c)   Progress towards completion of the project shall include any one of the following:

(1)   an application for a final plat or plan is submitted to a regulatory agency;

(2)   a good-faith attempt is made to file with a regulatory agency an application for a permit necessary to begin or continue towards completion of the project;

(3)   costs have been incurred for developing the project including, without limitation, costs associated with roadway, utility, and other infrastructure facilities designed to serve, in whole or in part, the project (but exclusive of land acquisition) in the aggregate amount of five percent of the most recent appraised market value of the real property on which the project is located;

(4)   fiscal security is posted with a regulatory agency to ensure performance of an obligation required by the regulatory agency; or

(5)   utility connection fees or impact fees for the project have been paid to a regulatory agency.

Added by Acts 1999, 76th Leg., ch. 73, Sec. 2, eff. May 11, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 31 (S.B. 574), Sec. 1, eff. September 1, 2005.


Sec. 245.006.  ENFORCEMENT OF CHAPTER.  (a)  This chapter may be enforced only through mandamus or declaratory or injunctive relief.

(b)   A political subdivision's immunity from suit is waived in regard to an action under this chapter.

Added by Acts 1999, 76th Leg., ch. 73, Sec. 2, eff. May 11, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 31 (S.B. 574), Sec. 1, eff. September 1, 2005.


Sec. 245.007.   CONSTRUCTION AND RENOVATION WORK ON COUNTY-OWNED BUILDINGS AND FACILITIES IN CERTAIN COUNTIES.   (a)   This section applies only to a building or facility that is owned by a county with a population of 3.3 million or more and is located within the boundaries of another political subdivision.

(b)   A political subdivision may not require a county to notify the political subdivision or obtain a building permit for any new construction or any renovation of a building or facility owned by the county if the construction or renovation work is supervised and inspected by an engineer or architect licensed in this state.

(c)   This section does not exempt a county from complying with the building standards of the political subdivision during the construction or renovation of the building or facility.

Added by Acts 2005, 79th Leg., Ch. 532 (H.B. 960), Sec. 1, eff. June 17, 2005.

# TAB D



DEPOSITION
EXHIBIT
15

CONSTRUCTION NOTES:

ELECTRICAL:
PROVIDE 6 RV PAD SITES FOR EACH
200 AMP PANEL.
RV PEDESTALS TO BE DAISY -CHAINED
WITH 40-40-20 ALUMINUM URD WIRE
AND 1-#8 GREEN GROUND WIRE
WITHIN 2" PVC ELECTRICAL CONDUITS.

PLUMBING:
PROVIDE 2" PVC WATER MAINLINE TO
EACH RV PAD SITE.
PROVIDE 3/4" PVC RISER WITH HOSE
BIBB AT EACH RV PAD SITE.

SEWER:
SEE SEPERATE PLAN FOR SEWER.

F.M. NO. 543

PHASE A
PHASE B
PHASE C
PHASE D
PHASE E

DEVELOPMENT DATA:
297 BACK-IN RV SITES
109 UNCOVERED RV STORAGE SPACES
11- 80' LONG PULL-THRU RV SITES

43.416 ACRES

CODE COMPLIANCE:
2009 IBC COMPLIANCE
2009 IPC COMPLIANCE
2009 IFC COMPLIANCE
2009 IMC COMPLIANCE
2009 NEC COMPLIANCE
2009 IECC COMPLIANCE

PHASE PLAN

SITE DEVELOPMENT PLAN
TRINITY MEADOWS RV RESORT
3183 FM 543 McKINNEY TEXAS 75071

Hull Associates

A-1

REVISIONS

# TAB E

HBA-LJP H.B. 1445 77(R)BILL ANALYSIS


Office of House Bill AnalysisH.B. 1445
By: Turner, Bob
Land & Resource Management
6/14/2001
Enrolled


BACKGROUND AND PURPOSE

Prior to the 77th Legislature, a subdivision in the extraterritorial
jurisdiction (ETJ) of a municipality was subject to both municipal and
county development regulations.  This may have led to unnecessary expenses
and delays for property owners because municipalities and counties have
different standards, requirements, and levels of authority over
subdivisions.  House Bill 1445 provides for an agreement between the county
and the municipality to regulate a subdivision in the ETJ of a
municipality.

RULEMAKING AUTHORITY

It is the opinion of the Office of House Bill Analysis that this bill does
not expressly delegate any additional rulemaking authority to a state
officer, department, agency, or institution.

ANALYSIS

House Bill 1445 amends the Local Government Code to prohibit a plat from
being filed with the county clerk without the approval of the appropriate
governmental entity.

The bill prohibits a municipality and county from regulating subdivisions
in the extraterritorial jurisdiction (ETJ) of the municipality after an
agreement is executed that identifies whether the county or the
municipality is authorized to regulate subdivision plats and approve
related permits in the ETJ.  The bill requires a municipality and a county
by a specified time period to enter into such written agreement and adopt
the agreement by order, ordinance, or resolution.  The bill also sets forth
provisions relating to the notification and the amendment of the agreement
if there is any expansion or reduction in the ETJ.

The bill also authorizes the municipality and the county to enter into an
interlocal agreement that establishes one office that is authorized to
regulate plat application procedures for the ETJ and establishes a
consolidated and consistent sets of regulations related to plats and
subdivisions of land.

Until a written agreement is reached between the county and municipality,
the bill prohibits a plat from being filed with the county clerk for an
area in a municipality's ETJ without the approval of  both the municipality
and the county.  The bill also sets forth procedures for the filing of a
plat if one governmental entity requires the filing for the subdivision of
a particular tract of land in the ETJ and the other governmental entity
does not require such a filing.

The above provisions do not apply within a county that contains an ETJ of a
municipality with a population of 1.9 million or more or within a county
within 50 miles of an international border or a county which platting
requirements in certain economically distressed areas is applied.

EFFECTIVE DATE

September 1, 2001.

# TAB F

# BILL ANALYSIS

Senate Research Center

H.B. 265
By: Smith, Wayne (Eltife)
Intergovernmental Relations
5/13/2005
Committee Report (Amended)

## AUTHOR'S/SPONSOR'S STATEMENT OF INTENT

Under current law, there are no time limits placed on municipalities regarding the processing of building permits.

H.B. 265 requires municipalities to review a permit application within six weeks of its filing. If the permit is not approved, the municipality is required to meet with the applicant or send a letter to the applicant that outlines the problems with the application. If the applicant resubmits the application with necessary corrections, the municipality has one month to approve or reject the application or all permit fees are waived.

## RULEMAKING AUTHORITY

This bill does not expressly grant any additional rulemaking authority to a state officer, institution, or agency.

## SECTION BY SECTION ANALYSIS

SECTION 1. Amends Subchapter Z, Chapter 214, Local Government Code, by adding Section 214.904, as follows:

Sec. 214.904. TIME FOR ISSUANCE OF MUNICIPAL BUILDING PERMIT. (a) Provides that this section applies only to a permit require by a municipality for certain purposes.

(b) Requires the municipality to take certain actions, within a specified period of time.

(c) Requires the municipality to grant or deny a permit application for which notice is provided under Subsection (b)(2), within a specified period of time.

(d) Prohibits the municipality from collecting any permit fees associated with the application and requires the municipality to refund the applicant any permit fees associated with the application that have been collected, under specific circumstances.

SECTION 2. Amends the heading to Subchapter Z, Chapter 214, Local Government Code to read as follows:

SUBCHAPTER Z. MISCELLANEOUS POWERS AND DUTIES

SECTION 3. Makes application of this Act prospective.

SECTION 4. Effective date: September 1, 2005.

## AMENDMENTS

Committee Amendment No. 1

On page 1, lines 18-21 strike 214.904(c) and substitute with a new Subsection 214.904(c) to read,

(c) Requires the applicant, for a permit application for which notice is provided under Subsection (b)(2), to provide the missing information or correct the permit application as stated in the notice provided under Subsection (b)(2) within 30 days. Requires a municipality to then grant or deny the permit not later than the 30th day after the date all the missing and/or corrected information is received.